1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8

| | |
|---|---|
| Bobby Rydell Lee, | )<br>)<br>) |
|         Petitioner, | ) |
| vs. | )<br>) |
| Dora B. Schriro, et al., | )<br>) |
|         Respondents. | )<br>) |

CV-04-2560-PHX-FJM (JCG)

**REPORT & RECOMMENDATION**

14        Petitioner, Bobby Rydell Lee, who is presently confined in the Arizona State Prison

15   Complex in Florence, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28

16   U.S.C. § 2254. Pursuant to the Rules of Practice of this Court, this matter was referred to

17   Magistrate Judge Guerin for Report and Recommendation.  Before the Court are the Petition

18   for Writ of Habeas Corpus ("Petition"), Respondents' Answer to Petition for Writ of Habeas

19   Corpus ("Answer"), and Petitioner's Reply to Respondents' Answer ("Reply").   The

20   Magistrate Judge recommends that the District Court deny the petition with respect to

21   Grounds 2, 3 and 4, and stay the petition with respect to Ground 1 in order to allow Petitioner

22   an opportunity to exhaust his state court remedies.

23                  **FACTUAL AND PROCEDURAL BACKGROUND**

24        On September 17, 1998, Petitioner was convicted by a jury in Maricopa County

25   Superior Court in the State of Arizona of one count of Armed Robbery with three prior

26   felony convictions, a class two felony. (Answer, Ex. A.)  According to the Arizona Court of

27
28

Appeals,[1] the criminal case against Petitioner alleged that Petitioner struck the victim with a "club" (anti-car-theft device), stole his car and his wallet, and then attempted to elude police during a high-speed chase in which he struck two police cars. (Answer, Ex. E, pg. 2.) Petitioner admitted at trial that he stole the victim's vehicle from a Phoenix gas station and that he was in possession of the victim's wallet when he was arrested by police following the high-speed chase. (Answer, Ex. E, pg. 2.) Petitioner denied that he struck the victim, however, and claimed that he discovered the vehicle unoccupied with the engine running and a wallet on the front seat. The jury rejected Petitioner's testimony and convicted him. (Answer, Ex., E, pg. 2.) On October 28, 1998, Petitioner was sentenced to a presumptive term of 15.75 years. (Answer, Ex. A.)

Lee timely appealed his conviction to the Arizona Court of Appeals, raising the following claims: (1) whether the prosecutor's failure to disclose "exculpatory evidence" from the victim constituted ground for dismissal with prejudice, (2) whether the prosecutor's failure to disclose that the victim would identify the Petitioner at trial constituted ground for dismissal with prejudice or a new trial with preclusion of the undisclosed evidence, (3) whether the admission of hearsay evidence of an unavailable witness under the excited utterance exception to the hearsay rule violated Petitioner's due process and confrontation clause rights, and (4) whether Petitioner was properly informed of his constitutional rights and the special release conditions of community supervision before admitting to prior felony convictions. (Answer, Ex. B.) On October 26, 1999, the Arizona Court of Appeals issued a memorandum decision denying relief on each of Petitioner's claims. (Answer, Ex. E.) On December 8, 1999, Petitioner filed a pro se petition for review raising the same four claims (Answer, Ex. F); on March 31, 2000, the Arizona Supreme Court denied review without comment. (Answer, Ex. G.)

On April 25, 2000, Petitioner filed a notice of post conviction relief under Rule 32,

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct."

2

Ariz. R. Crim. P.  (Answer, Ex. H.)  After receiving numerous extensions of time, Petitioner filed, through counsel, on November 30, 2000, a petition for post conviction relief in which he presented five claims for ineffective assistance of counsel in violation of the 5th, 6th and 14th Amendments: (1) defense counsel failed to file pretrial motions challenging a witness' out-of-court identification and to preclude other-act evidence, (2) defense counsel failed to interview material witnesses, (3) defense counsel failed to request a mistrial, (4) defense counsel failed to request a lesser-included-offense jury instruction for theft; and (5) defense counsel filed a motion for new trial that failed to include the victim's non-disclosed ability to identify the defendant as a basis for that motion. (Answer, Ex. I.)  On March 26, 2001, the trial court issued a detailed minute entry addressing Petitioner's claims; the trial court concluded that Petitioner's trial counsel was not constitutionally ineffective and accordingly dismissed Petitioner's petition for post conviction relief. (Answer, Ex. J.)

On April 10, 2001, Petitioner filed, through counsel, a petition for review of the trial court's dismissal of his petition for post conviction relief.  (Answer, Ex. K.)  In that petition, Petitioner presented some but not all of the issues presented in the petition for post conviction relief filed with the trial court.  (Answer, Ex. K.)  On December 11, 2001, the Arizona Court of Appeals denied review without comment.  (Answer, Ex. L.)  Petitioner then filed a pro se petition for review in the Arizona Supreme Court, raising the same claims of ineffective assistance of counsel that he presented to the Arizona Court of Appeals.  (Answer, Ex. M.) On July 17, 2002, the Arizona Supreme Court denied review without comment. (Answer, Ex. N.)

According to Respondents, some time after his first Rule 32 petition for post conviction relief was denied, Petitioner filed in the trial court a document titled "Complaint: At Law Action on Petition for the Issue of the Writ of Habeas Corpus Ad Subjiciendum," but the document cannot be located in the court record or on the court's computerized docket. Petitioner attached to his Reply a document titled "Complaint: At Law Action on Petition for the Issue of the Writ of Habeas Corpus Ad Subjiciendum," which he claims was filed with the trial court, but which is not dated or file-stamped.  On December 10, 2002, the Maricopa

3

County Superior Court issued a minute entry dismissing a "Complaint: At Law Action on Petition for the Issue of the Writ of Habeas Corpus Ad Subjiciendum" filed by Petitioner on the ground that it constituted a successive Petition for Post Conviction Relief which presented claims that were or should have been raised in Petitioner's direct appeal or his first Rule 32 proceeding.  (Answer, Ex. P.)  On January 6, 2003, Petitioner filed a petition for review (Answer, Ex. Q); the Arizona Court of Appeals denied review without comment on March 2, 2004.  (Answer, Ex. R.)

On November 15, 2004, Petitioner filed his Petition for Writ of Habeas Corpus in federal court.  In his Petition, Petitioner presents four claims for relief:

1.   **Ground 1:** Petitioner's due process and confrontation clause rights were violated when the trial court allowed the State to introduce the out-of-court statements of Reginald Byrd, an unavailable eye-witness, under the excited utterance exception to the hearsay rule;

2.   **Ground 2:** Petitioner's 5th, 6th, 8th, and 14th Amendment rights were violated when the prosecutor failed to disclose that the testifying victim would be able to identify Petitioner at trial;

3.   **Ground 3:** Petitioner's 5th, 6th, 8th, and 14th Amendment rights were violated when a testifying police officer presented hearsay testimony from another officer regarding that officer's vehicle being struck by the car stolen by Petitioner.  Petitioner claims that the hearsay testimony constituted evidence of a crime against an officer, with which Petitioner was not charged;

4.   **Ground 4:** Petitioner's 6th, 8th, and 14th Amendment rights were violated because Petitioner received ineffective assistance of counsel.  Specifically, Petitioner contends that his counsel failed to (a) file one pretrial motion to suppress "evidence, identification, and hearsay statements" by eye-witness Byrd and another pretrial motion pursuant to Rule 404, Ariz. R. Evid., to preclude testimony regarding Petitioner striking a police officer's car while fleeing the scene, (b) interview material witnesses, (c) accept offer of mistrial, and (d)  request an instruction on theft as a lesser-included-offense of armed

4

robbery.  (Petition, pgs. 5-8.)

## **DISCUSSION**

### A.    **Exhaustion**

Ordinarily, before a federal court will consider the merits of a habeas petition, the petitioner must exhaust the remedies available to him in state court.    28 U.S.C. §2254(b)(1)(A);  Picard v. Connor, 404 U.S. 270, 275 (1971).  First enunciated in Ex parte Royall, 117 U.S. 241 (1886), the exhaustion requirement is designed "not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court."  Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992).  The requirement is "grounded in principles of comity, and reflects a desire to protect state courts' role in the enforcement of federal law."  Castille v. Peoples, 489 U.S. 346, 349 (1989) (citation omitted).  The requirement is also based on a pragmatic consideration that fully exhausted claims will usually be accompanied by a complete factual record once they reach federal court.  Rose v. Lundy, 455 U.S. 509, 519 (1982).

A petitioner must exhaust his claims by fairly presenting them to the state's highest court, through either a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254.  See Rose, 455 U.S. at 519.  A petitioner must have also presented his claim in a procedural context in which its merits will be considered.  See Castille, 489 U.S. at 351.  A habeas petitioner's claims may be precluded from federal review on exhaustion grounds in either of two ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds.  See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991). Second, the claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  Id. at 735 n.1.  If a petitioner has procedurally defaulted a claim in state court, a federal court will not review

1  the claim unless the petitioner shows "cause and prejudice" for the failure to present the

2  constitutional issue to the state court, or makes a colorable showing of actual innocence.  See

3  Gray v. Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 339 (1992);

4  Murray v. Carrier, 477 U.S. 478, 485 (1986).

5       Respondents contend in their Answer that this Court is precluded from considering

6  the merits of Grounds 2 and 3 of the Petition, as well as portions of Ground 4, because

7  Petitioner failed to exhaust those claims within the state system and now those claims are

8  procedurally defaulted.

9       The Magistrate Judge agrees with Respondent's contention that Ground 3 of the

10  Petition, as well as portions of Ground 4, should be denied as procedurally defaulted, but

11  recommends finding that Petitioner fairly exhausted Ground 2 and portions of Ground 4.  In

12  addition, although Respondents argued that Ground 1 should be dismissed on its merits, the

13  Magistrate Judge recommends finding that Petitioner has not exhausted his state court

14  remedies with respect to Ground 1, but that because Petitioner has not procedurally defaulted

15  Ground 1, this Court's review of Ground 1 be stayed pending further review by the state

16  court.

17       **i.    Petitioner's state court "Complaint: At Law Action on Petition for the Issue of the Writ of Habeas Corpus Ad Subjiciendum"**

18

19       As a threshold matter, the Magistrate Judge recommends that Petitioner's "Complaint:

20  At Law Action on Petition for the Issue of the Writ of Habeas Corpus Ad Subjiciendum"

21  (hereafter "Complaint") be excluded from the Court's exhaustion analysis on the ground that

22  claims raised in the Complaint were not fairly presented to the state court.  In order to fairly

23  present a claim to the state court, a petitioner must raise his claim in a procedural context in

24  which its merits will be considered.  See Castille, 489 U.S. at 351.  Arizona provides two

25  procedural vehicles for petitioners seeking post conviction relief: a direct appeal pursuant to

26  Rule 31.19, Ariz. R. Crim. P.,  or a petition for post conviction relief pursuant to Rule 32.9,

27  Ariz. R. Crim. P.  Petitioner's Complaint was neither.  Because Petitioner's Complaint is not

28  a part of the state court record, nor was a file-stamped copy provided to this Court, the Court

1    is unable to confirm which, if any, claims were presented to the Arizona court in Petitioner's

2    Complaint; but even if the Court were able to make such a determination, such inquiry would

3    not be appropriate given Petitioner's failure to present those claims to the Arizona court in

4    a procedurally appropriate manner.

5         **ii.      Ground 2**

6         Respondents assert that Petitioner failed to exhaust Ground 2 because he argued on

7    direct appeal that the prosecutor's alleged misconduct in failing to disclose the victim's

8    potential identification of Petitioner at trial was a violation only of Arizona's disclosure rules

9    and that Petitioner failed to allege any federal claims.

10        The Magistrate Judge recommends finding that Petitioner fairly exhausted Ground 2

11   in his direct appeal to the Arizona Court of Appeals to the extent that Ground 2 alleges a

12   violation of Petitioner's 5th Amendment rights.  In his direct appeal, Petitioner argued that

13   the prosecutor committed prosecutorial error in failing to disclose the victim's ability to

14   identify Petitioner at trial, and that "where there is prosecutorial error, and where the defense

15   does not move for a mistrial, both the federal and Arizona Constitutions may require that the

16   case be dismissed with prejudice due to State misconduct and double jeopardy

17   considerations." (Answer, Ex. B, pg. 18.)   The Double Jeopardy clause appears in the 5th

18   Amendment; thus, Petitioner's appeal can be construed as arguing that his 5th Amendment

19   rights were violated.  Petitioner supported this argument with citation to federal law, namely

20   Oregon v. Kennedy, 456 U.S. 667, 686 (1982), a plurality opinion that evaluates the

21   circumstances in which prosecutorial misconduct giving rise to a mistrial entitles a defendant

22   to invoke the double jeopardy bar of the 5th Amendment.   (Answer, Ex. B, pg. 18.)

23   Accordingly, the state appellate court was fairly alerted to Petitioner's 5th Amendment claim.

24   See Lyons v. Crawford, 232 F.3d 666, 668-70 (9th Cir. 2000), as modified by 247 F.3d 904

25   (9th Cir. 2001) (stating that to raise the federal legal theory for purposes of exhaustion, a

26   petitioner must simply characterize a claim as federal in nature, by either referencing specific

27   provisions of the Constitution or citing to federal or state case law analyzing the federal

28   constitutional issue).  Because Petitioner made no mention of his 6th, 8th, or 14th Amendment

7

1   rights being violated by the alleged prosecutorial misconduct, however, those portions of

2   Ground 2 are not exhausted.  The merits of Ground 2, to the extent it alleges a violation of

3   the 5th Amendment, are addressed later in this Report and Recommendation.

       **iii.**    **Ground 3**

5        The Magistrate Judge recommends finding that Ground 3 is not exhausted.  Review

6   of the state court record indicates that Petitioner did not allege before the state court that his

7   constitutional rights were violated when a testifying police officer presented hearsay

8   testimony from another officer regarding the second officer's vehicle being struck by the car

9   stolen by Petitioner.  Although Petitioner argued before the Arizona Court of Appeals in his

10  petition for post conviction relief that he received ineffective assistance of counsel because

11  his trial counsel failed to file a pretrial motion to preclude the officer's testimony as other

12  acts evidence pursuant to Ariz. R. Evid. 404, Petitioner did not allege that the officer's

13  testimony, in and of itself, violated his 5th, 6th, 8th, and 14th Amendment rights.  Accordingly,

14  the constitutional ground for Ground 3 was never presented to the state courts, and cannot

15  be raised for the first time in federal court.  See Picard, 404 U.S. at 277 (holding that it is not

16  sufficient to raise only the facts supporting the claim; rather, "the constitutional claim ...

17  inherent in those facts" must be brought to the attention of the state court).

18       Petitioner is now precluded by Arizona Rules of Criminal Procedure 32.2(a)(3) and

19  32.4 from obtaining relief on Ground 3 in state court absent an applicable exception, which

20  he does not assert.  See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h); Beaty v. Stewart, 303 F.3d

21  975, 997, 987 & n.5 (9th Cir. 2002) (finding no state court remedies and noting that petitioner

22  did not raise any exceptions to Rule 32.2(a)).  Thus, Ground 3 is technically exhausted but

23  procedurally defaulted, absent a showing of cause and prejudice or a "fundamental

24  miscarriage of justice."  Coleman, 501 U.S. at 750 (citations omitted; internal quotation

25  marks omitted); see also Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992).  Petitioner

26  does not allege either cause and prejudice or a fundamental miscarriage of justice to

27  overcome the default, therefore, this Ground should be dismissed as procedurally barred.

28

1

### iv.     Ground 4

2      Respondents argue that Petitioner failed to exhaust two portions of his claim for

3 ineffective assistance of counsel: (1) that trial counsel was ineffective for failing to file two

4 pretrial motions; and (2) that counsel was ineffective for failing to interview material

5 witnesses.  The Magistrate Judge agrees with Respondent that Petitioner failed to exhaust his

6 ineffective assistance of counsel claim arising from trial counsel's alleged failure to interview

7 material witnesses, but concludes that Petitioner fairly exhausted his claim that trial counsel

8 was ineffective for failing to file a pretrial motion to exclude evidence related to Petitioner's

9 flight from the scene under Rule 404, Ariz. R. Evid.

10      Petitioner's Rule 32 petition for post conviction relief alleged five claims of

11 ineffective assistance of counsel: (1) defense counsel failed to file two pretrial motions, the

12 first to exclude the pretrial identification of Petitioner by Byrd, and the second to exclude

13 evidence of Petitioner's attempts to elude police as other acts evidence precluded by Rule

14 404, Ariz. R. Evid.; (2) defense counsel failed to interview material witnesses; (3) defense

15 counsel failed to request a mistrial; (4) defense counsel failed to request a lesser included

16 offense jury instruction for theft; and (5) defense counsel filed a motion for new trial that

17 failed to include the victim's non-disclosed ability to identify the defendant as a basis for that

18 motion. (Answer, Ex. I.)  Petitioner's petition for review of the trial court's dismissal of his

19 Rule 32 petition in the Arizona Court of Appeals presented the same issues as those

20 presented in the Rule 32 petition, with two exceptions.  First, Petitioner did not present any

21 allegations related to his claim that trial counsel erred in failing to file a pretrial motion to

22 exclude Byrd's pretrial identification of Petitioner.  (Answer, Ex. K.)  Second, Petitioner did

23 not present any allegations related to his earlier claim that defense counsel's failure to

24 interview material witnesses violated his right to effective assistance of counsel.  (Answer,

25 Ex. K.)  Because Petitioner did not exhaust his state court remedies with respect to these two

26 claims, and would be procedurally barred from doing so now, Petitioner's claims for

27 ineffective assistance of counsel arising from trial counsel's failure to file a pretrial motion

28 to exclude Byrd's pretrial identification of Petitioner, and trial counsel's failure to interview

1    material witnesses, are procedurally defaulted.

2            In contrast, when Petitioner challenged the trial court's dismissal of his Rule 32

3    petition in the Arizona Court of Appeals, Petitioner fairly stated the operative facts and legal

4    theory to support his claim of ineffective assistance of counsel arising from trial counsel's

5    failure to file a pretrial motion to exclude evidence of Petitioner's attempts to elude police

6    as other acts evidence precluded by Rule 404, Ariz. R. Evid.  In his petition for review in the

7    Court of Appeals, Petitioner argued that the trial court abused its discretion in denying

8    Petitioner's claims that he was deprived of effective assistance of counsel in violation of the

9    Sixth and Fourteenth Amendments to the United States Constitution.  (Answer, Ex. K, pg.

10   3.)[2]  Petitioner attached the trial court's minute entry to his petition for review, and

11   specifically took issue with "paragraph four of the court's order dismissing the defendant's

12   petition [in which] the court states that it is not aware of any pretrial motions which would

13   have been appropriate for filing in this case."  Petitioner went on to argue that "the court

14   concludes that the events immediately following the armed robbery did not fall within the

15   parameters of Rule 404 . . . but cannot say that trial counsel's failure to file proper motions

16   would not have resulted in preclusion of this evidence."  (Answer, Ex. K, pg. 4.)  Thus, the

17

18   _____

19   [2]    The right to effective assistance of counsel is guaranteed by the 6th Amendment and the
     due process clauses of the 5th and 14th Amendments.  See Strickland v. Washington, 466 U.S. 668,
20   684-5 (1984) ("[T]his Court has recognized that the Sixth Amendment right to counsel exists, and
     is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair
21   trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through
     the several provisions of the Sixth Amendment, including the Counsel Clause.").  In his Rule 32
22   petition, Petitioner correctly identified his ineffective assistance of counsel claim as a federal claim
     arising out of the 5th, 6th and 14th Amendments. (Answer, Ex. I, pg. 2.) He identified only the 6th and
23   14th Amendments in his petition to the Arizona Court of Appeals for review of the trial court's denial
     of his Rule 32 petition.  (Answer, Ex. K, pg. 3.)  In his federal petition, Petitioner argues that he has
24   been deprived of his right to effective assistance of counsel as guaranteed by the 6th, 8th, and 14th
     Amendments.  (Petition, pg. 8.)  Thus, Petitioner has fairly exhausted his claim for ineffective
25   assistance of counsel arising from the 6th and 14th Amendments.  Petitioner's claim that he was
     deprived of effective assistance of counsel in violation of the 8th Amendment has not been properly
26   exhausted although, notably, the 8th Amendment does not give rise to a claim for ineffective
     assistance of counsel during trial.  The right to be free of cruel and unusual punishment, by
27   definition, is a protection related to the imposition or carrying out of a sentence; the protection
     afforded by the 8th Amendment does not attach until a person is convicted and subject to punishment
28   by the state.  See Ingraham v. Wright, 430 U.S. 651, 664, 667, 671 n.40 (1977); Bell v. Wolfish, 441
     U.S. 520, 536 n.16 (1979).

Arizona Court of Appeals was presented with the facts and legal theory necessary to conclude that Petitioner was stating a claim for ineffective assistance of counsel arising from trial counsel's failure to file a pretrial motion to exclude evidence of Petitioner's attempts to flee the scene.  The merits of this portion of Ground 4 are therefore addressed below.

### v.     Ground 1

The Magistrate Judge recommends finding that Ground 1 is not exhausted, but that Petitioner has not procedurally defaulted Ground 1.

Reginald Byrd was an eye-witness who was unavailable to testify at Petitioner's trial. (Answer, Ex. E, pg. 11.)  Due to Byrd's absence, one of the investigating officers was permitted, pursuant to the excited utterance exception to the hearsay rule, to testify that Byrd was talking to a 911 operator on his cellular phone when officers arrived at the scene. (Answer, Ex. E, pg. 11.)  At the direction of one of the officers, Byrd hung up his phone and stated that he had seen a Hispanic man recoiling his arm from the victim with a two- or three-foot-long object in his hand.  See id.  Byrd also stated that he then saw the victim lying on the ground and saw the victim's car leave the station at high speed.  See id.   In Ground 1, Petitioner claims that his due process and confrontation clause rights were violated when the trial court allowed the State to introduce Byrd's out-of-court statements because Petitioner was unable to cross-examine Byrd.

This Court cannot consider the merits of Ground 1 unless and until Petitioner has exhausted the claim by fairly presenting it to the state's highest court, either through a direct appeal or collateral proceedings. See Rose, 455 U.S. at 519. Petitioner raised this claim in his direct appeal (Answer, Ex. B, pgs. 21-23), and it was rejected by the Court of Appeals. (Answer, Ex. E, pgs. 10-12.) The Arizona Supreme Court then denied review. (Answer, Ex. G.)  Ordinarily, Petitioner would now be precluded from raising the claim again in the Arizona courts, see Ariz. R. Crim. P. Rule 32.2(a)(2) (precluding post conviction relief where the petitioner's claim was finally adjudicated on the merits on appeal or in any previous collateral proceeding), and the claim would therefore be considered exhausted for purposes of this Court's inquiry.   Arizona law provides, however, that a prisoner is not prohibited

11

from raising the same claim in a subsequent petition for post conviction relief if "[t]here has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence." Ariz. R. Crim. P. Rule 32.1(g). Thus, a claim that falls within this exception remains subject to post conviction consideration by the state court, is therefore not exhausted, and cannot be considered by this Court in a petition for writ of habeas corpus.

In the present case, the law regarding admission of hearsay testimony by unavailable witnesses has changed since the Arizona Court of Appeals affirmed Petitioner's conviction on direct appeal. The Arizona Court of Appeals concluded that Petitioner's confrontation clause rights were not violated pursuant to the standard set forth in Ohio v. Roberts, 448 U.S. 56 (1980): an unavailable witness's out-of-court statement may be admitted so long as it has adequate indicia of reliability, i.e. falls within a firmly rooted hearsay exception or bears particular guarantees of trustworthiness. See Roberts, 448 U.S. at 66 (1980).[3] Roberts, however, was recently abrogated by Crawford v. Washington, 541 U.S. 36 (2004).

In Crawford, the Supreme Court concluded that history supported two inferences about the Confrontation Clause: first, that the "principal evil [it] was directed to address" was

---

[3]The Arizona Court of Appeals reasoned:

> Although cross-examination of the declarant is the favored means to protect a defendant's Confrontation Clause rights, a court does not violate the Sixth Amendment by admitting the hearsay statement of an unavailable declarant, provided that, under the totality of the circumstances, the hearsay statement possesses a high degree of reliability. State v. Jeffers, 135 Ariz. 404, 421, 661 P.2d 1105, 1122 (1983). A court may infer that a statement has sufficient reliability if it falls within a "firmly rooted hearsay exception." Id. at 422, 661 P.2d at 1123 (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980). And as the court observed in Jeffers, "[t]here is little doubt that the excited utterance qualifies as a firmly rooted hearsay exception . . . and generally any evidence that falls within such an exception would for that reason alone satisfy the reliability requirement." Id. Because the trial court admitted Byrd's statements under the excited utterance exception to the hearsay rule, and because defendant makes no argument that the trial court was wrong in doing so, we conclude that, as a properly admitted excited utterance under Rule 803(2), those statements bore sufficient indicia of reliability to satisfy the requirements of the Confrontation Clause.

(Answer, Ex. E, pg. 12.)

12

the use of <u>ex parte</u> examinations as evidence against the accused; and second, that the Confrontation Clause was intended to apply to "witnesses," <u>i.e.</u> those "who bear testimony'." 541 U.S. at 50-51, 53-54.  The Court stated that <u>Roberts</u>, in conditioning the admissibility of all hearsay evidence on whether the evidence fell within a firmly rooted hearsay exception or bore particularized guarantees of trustworthiness "depart[ed] from the historical principles identified [in the <u>Crawford</u> opinion] in two respects."  541 U.S. at 60.  First, <u>Roberts</u>'s holding was too broad: it applied the same mode of analysis whether or not the hearsay consisted of <u>ex parte</u> testimony.  <u>Id</u>.  Second, <u>Roberts</u>'s holding was too narrow: it admitted statements that did consist of <u>ex parte</u> testimony upon "a mere finding of reliability."  <u>Id</u>. <u>Crawford</u> therefore holds that, in a criminal trial, testimonial evidence of an unavailable witness may not be admitted unless the opposing party had a prior opportunity to cross-examine the witness.  541 U.S. at 68.

Under Rule 32.1(g), Ariz. R. Crim. P, if <u>Crawford's</u> abrogation of <u>Roberts</u> amounts to  "a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence," then Petitioner has available state court remedies that must be exhausted.  The Comments to Rule 32.1, Ariz. R. Crim. P., explain that Rule 32.1(g) "encompasses all claims for retroactive application of new constitutional and nonconstitutional legal principles."  In determining whether to apply new constitutional legal principles retroactively, Arizona courts apply the federal retroactivity standard announced in <u>Teague v. Lane</u>, 489 U.S. 288 (1989).  <u>See</u> <u>State v. Sepulveda</u>, 201 Ariz. 158, 159, 32 P.3d 1085, 1086 (App. 2001) (discussing the Arizona Supreme Court's decision, in <u>State v. Slemmer</u>, 170 Ariz. 174, 823 P.2d 41 (1991), to adopt the <u>Teague</u> framework for determining the retroactive application of new constitutional principles when those issues are raised in federal habeas corpus proceedings).  <u>Teague</u> holds that a new constitutional principle is to be applied retroactively on collateral review if it is a "new" rule that  falls within one of two exceptions: (1) it makes certain conduct exempt from the legislature's power to define criminal acts and is not implicated by <u>Apprendi</u>, or (2) it is a "watershed rule [ ] of criminal procedure" that "implicate[s] the fundamental fairness of the

1    trial."  Teague, 489 U.S. at 311-12.

2          Although Arizona courts have not yet addressed the issue, the Ninth Circuit, in
3    Bockting v. Bayer, 399 F.3d 1010, 1012 (9th Cir. 2005), confronted "[t]he thorny issue [of]
4    whether Crawford applies retroactively to [a] state habeas appeal."  Applying Teague, the
5    Ninth Circuit concluded that Crawford announced a new rule of criminal procedure, because
6    the Crawford Court disavowed Roberts in order to return to the "bedrock" "historical
7    principles" behind the Confrontation Clause.  399 F.3d at 1015-16.  The Bockting court
8    reasoned:  "That the Crawford requirement is fundamental to our legal regime is beyond
9    dispute. . . . Hundreds of years of tradition have embedded this notion as a fundamental role."
10   Id. at 1016.  According to the Ninth Circuit, the Crawford rule "implicates the fundamental
11   fairness and accuracy of the criminal proceeding'" because "the evidence that cross-
12   examination seriously decreases the possibility of inaccurate conviction is unequivocal. . .
13   .  At the heart of the Court's concerns in Crawford was the reliability of admitted evidence.
14   Where admitted evidence is unreliable, the accuracy of convictions is seriously undermined."
15   Id. at 1016-17.  Accordingly, the Ninth Circuit concluded that Crawford should be applied
16   retroactively in state habeas appeals.

17         Because Arizona courts determine retroactivity pursuant to Teague, and because the
18   Ninth Circuit has applied Teague and concluded that Crawford should be applied
19   retroactively in collateral proceedings, it appears that Petitioner may have a viable state court
20   remedy under the Rule 32.1(g) exception for significant changes in the law that if determined
21   to apply to defendant's case would probably overturn the defendant's conviction or sentence.
22   When a petitioner has an available remedy in state court that he has not procedurally
23   defaulted, it is appropriate for the federal court to stay the federal habeas proceedings if there
24   was good cause for the petitioner's failure to exhaust his claims first in state court, his
25   unexhausted claims are potentially meritorious,  and there is no indication that the petitioner
26   engaged in intentionally dilatory litigation tactics.  See Rhines v. Weber, 544 U.S. 269, 277
27   (2005).

28         What constitutes "good cause" under Rhines has not been precisely defined, except

to indicate at the outer end that petitioner must not have engaged in purposeful dilatory tactics, see id., and that "extraordinary circumstances" need not be found. Jackson v. Roe, 425 F.3d 654, 661-62 (9th Cir. 2005).  Several of the Rhines concurring justices expressed concern that the good cause requirement not be so strictly construed as to "trap the unwary pro se prisoner," and other concurring justices suggested that the "good cause" requirement be eliminated and a stay granted absent evidence of "intentionally dilatory litigation tactics." Rhines, 544 U.S. at 279 (Stevens, J., concurring)(Souter, J., concurring).   At least one district court has regarded the Rhine "good cause" standard as analogous to the showing necessary to satisfy the requirement that a habeas petitioner demonstrate "cause" to excuse a failure to exhaust in the context of procedural default.  See Hernandez v. Sullivan, 397 F. Supp. 2d 1205, 1206-7 (C.D.Cal. 2005).  Under that standard, cause exists when a claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A)(2000).  In this case, Crawford was decided after the Arizona Supreme Court had denied review on Petitioner's Rule 32 petition, and the Ninth Circuit did not determine that Crawford was retroactive until after Petitioner had filed his federal petition.   Thus it can be fairly concluded that good cause exists in the present case with respect to Ground 1.

In addition, it cannot be said that Ground 1 is so utterly lacking in merit that it should be dismissed without providing the Petitioner an opportunity to exhaust his state remedies. Ordinarily, the Court may deny a claim on its merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State, if it concludes that the state court's failure to apply the correct legal standard constituted harmless error.  See 28 U.S.C. § 2254(b)(2); Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).  In this case, however, the Arizona court's error does not withstand harmless error analysis. Lee admitted at trial that he had stolen the victim's car and taken the victim's wallet, but he denied hitting the victim with a club.  (Answer, Ex. E, pg. 2.)  Without evidence that Lee had hit the victim with a club, the state would not have been able to charge Lee with armed robbery and would have had to pursue a lesser charge of theft.  It appears from the record that Byrd's testimony was the only

15

evidence tending to prove that a man who looked like Lee hit the victim with the club, and therefore was the only evidence to refute Lee's claim that he never injured the victim.[4] Accordingly, the admission of this evidence had a "substantial and injurious effect or influence" in determining the jury's verdict. See Bockting, 399 F.3d at 1022, as amended 408 F.3d 1127 (9th Cir. 2005) (stating that improper admission of testimony that constitutes a critical piece of corroborating evidence, particularly in light of weaknesses in other evidence presented by the prosecution, has a substantial and injurious effect or influence).

In sum, Petitioner's failure to argue retroactive application of Crawford to his case is supported by good cause, and Ground 1 is a potentially meritorious claim. In addition, there is no evidence before the Court that Petitioner has engaged in intentionally dilatory litigation tactics. Accordingly, the Magistrate Judge recommends staying Ground 1 of the petition while Petitioner pursues his state court remedies. The Magistrate Judge notes, however, that even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. See Rhines, 544 U.S. at 278. The U.S. Supreme Court has instructed district courts to place reasonable time limits on a petitioner's trip to state court and back. See id. (suggesting that district courts" should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed").

**B.   Merits**

**i.   Standard of Review**

On habeas review, a state court's findings of fact are entitled to a presumption of correctness when fairly supported by the record. Wainwright v. Witt, 469 U.S. 412, 426 n. 7 (1985). The presumption of correctness also applies to a state appellate court's findings

---

[4] As discussed in section B.ii below, the victim testified that Petitioner was the last person he saw before he was hit, but did not testify that Petitioner had hit him. (Answer, Ex. E, pg. 8.) The victim did not identify Petitioner until trial, and then did not testify to the identification until redirect, two facts that weaken the value of his testimony.

1   of fact.  Sumner v. Mata, 449 U.S. 539, 546 (1981).  The question presented in a state

2   prisoner's petition for a writ of habeas corpus is "whether the state proceedings satisfied due

3   process."  Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

4          Federal courts may entertain a state prisoner's petition for habeas relief only on the

5   grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the

6   United States.  Reed v. Farley, 512 U.S. 339, 347 (1994).  General improprieties occurring

7   in state proceedings are cognizable only if they resulted in fundamental unfairness and

8   consequently violated the petitioner's Fourteenth Amendment right to due process.  Estelle

9   v. McGuire, 502 U.S. 62, 67-68 (1991)("[I]t is not the province of a federal habeas court to

10  reexamine state-court determinations on state-law questions."); Bonin v. Calderon, 77 F.3d

11  1155, 1158 (9th Cir. 1996).  The Supreme Court has held in the habeas context that "[t]his

12  Court will not review a question of federal law decided by a state court if the decision of that

13  court rests on a state law ground that is independent of the federal question and adequate to

14  support the judgment."  Coleman v. Thompson, 501 U.S. 722, 729 (1991).  The provisions

15  of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) govern this case and pose

16  special burdens. Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc). Under the

17  AEDPA, when reviewing a state criminal conviction, a federal court may grant a writ of

18  habeas corpus only if a state court proceeding:  "(1) resulted in a decision that was contrary

19  to, or involved an unreasonable application of, clearly established Federal law, as determined

20  by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

21  unreasonable determination of the facts in light of the evidence presented in the State court

22  proceeding." 28 U.S.C. § 2254(d).

23         Under § 2254(d)(1), a state court decision is  "contrary to" clearly established

24  Supreme Court precedent "if the state court applies a rule that contradicts the governing law

25  set forth" in Supreme Court cases or "if the state court confronts a set of facts that are

26  materially indistinguishable from" a Supreme Court decision but "nevertheless arrives at a

27  result different from" that precedent. Williams v. Taylor, 529 U.S. 362, 405-06 (2000)

28  (O'Connor, J., writing majority opinion in part). A state court decision is an unreasonable

1    application of clearly established federal law if "the state court identifies the correct
2    governing legal principle" from a Supreme Court decision "but unreasonably applies that
3    principle to the facts of the prisoner's case." Id. at 407.  In considering whether a state court
4    has unreasonably applied Supreme Court precedent, "a federal habeas court may not issue
5    the writ simply because that court concludes in its independent judgment that the relevant
6    state-court decision applied clearly established federal law erroneously or incorrectly.
7    Rather, that application must also be unreasonable." Id. at 411; Bell v. Cone, 535 U.S. 685,
8    694 (2002). In conducting habeas review, we "presum[e] that state courts know and follow
9    the law." Woodford v. Visciotti, 537 U.S. 19, 24 (2002).

10            **ii.    Ground 2**

11            Petitioner alleges that the prosecutor engaged in prosecutorial misconduct in violation
12   of the 5th Amendment protection against double jeopardy when the prosecutor failed to
13   disclose that the testifying victim would be able to identify Petitioner at trial – misconduct
14   that Petitioner argues was grounds for dismissal, not a mistrial.  Respondents did not brief
15   the merits of Ground 2, based on their conclusion that Petitioner had failed to exhaust his
16   state remedies with respect to this claim.

17            During trial, the prosecutor learned, via a note from another attorney in his office, that
18   the victim could identify the Petitioner. (Answer, Ex. E, pg. 7.)  Without informing the court
19   or defense counsel of the information he had received, the prosecutor called the victim to the
20   stand. Id. He did not elicit the identification of the Petitioner during direct examination, but
21   instead waited until redirect, when he asked the victim whether a man to whom the victim
22   had given a dollar was the last person that the victim spoke to before being hit.  The victim
23   responded in the negative, and identified Petitioner as the last person that he saw.  Id.  The
24   trial court permitted defense counsel to engage in recross examination of the victim
25   concerning his eleventh-hour identification of Petitioner.  Id.  Defense counsel argued for a
26   more severe sanction against the state for its failure to immediately disclose the victim's
27   ability to identify Petitioner.  Id.  After extensive discussion with the parties regarding the
28   appropriate response to the prosecutor's failure to disclose the information, the trial court

18

1   offered to grant a mistrial, but defense counsel declined.  Id.  The trial court then concluded

2   that no appropriate sanction other than a mistrial existed, and allowed the trial to proceed.

3   Id.

4        On appeal, Petitioner argued that the prosecutor committed prosecutorial error in

5   failing to disclose the victim's ability to identify Petitioner at trial, and that "where there is

6   prosecutorial error, and where the defense does not move for a mistrial, both the federal and

7   Arizona Constitutions may require that the case be dismissed with prejudice due to State

8   misconduct and double jeopardy considerations."  (Answer, Ex. B, pg. 18.)  Petitioner

9   supported this argument with citation to federal law, namely Justice Steven's concurrence

10  in Oregon v. Kennedy, 456 U.S. 667, 686 (1982), a plurality decision.  (Answer, Ex. B, pg.

11  18.)  The Arizona Court of Appeals noted that "the trial court . . . concluded after extensive

12  inquiry that the prosecutor's failure to immediately disclose what he had learned did not rise

13  to the level of intentional misconduct necessary to support dismissal with prejudice."

14  (Answer, Ex. E, pg. 8.)  The Court of Appeals declined to substitute its judgment for that of

15  the trial court, concluding that the record permitted the trial court's conclusion.

16        The Arizona Court of Appeal's decision was not contrary to clearly established federal

17  law.  In rejecting Petitioner's due process claim arising from the alleged prosecutorial

18  misconduct, the Court of Appeals relied on the holding stated in Pool v. Superior Court of

19  Pima County, 139 Ariz. 98, 677 P.2d 261 (1984):

20              We hold, therefore, that jeopardy attaches under art. 2, § 10 of the
            Arizona Constitution when a mistrial is granted on motion of defendant
21          or declared by the court under the following conditions: 1. Mistrial is
            granted because of improper conduct or actions by the prosecutor; and
22          2. such conduct is not merely the result of legal error, negligence,
            mistake, or insignificant impropriety, but, taken as a whole, amounts to
23          intentional conduct which the prosecutor knows  to be improper and
            prejudicial, and which he pursues for any improper purpose with
24          indifference to a significant resulting danger of mistrial or reversal; and
            3. the conduct causes prejudice to the defendant which cannot be cured
25          by means short of a mistrial.

26  Pool, 139 Ariz. at 108-9, 677 P.2d at 271-72.  The holding in Pool is not contrary to federal

27  law.  Pool's holding is in keeping with Oregon v. Kennedy, 456 U.S. 667 (1982) the leading

28  United States Supreme Court case.  In Oregon, the Supreme Court agreed, in a plurality

19

1    opinion, that "circumstances under which such a defendant may invoke the bar of double

2    jeopardy in a second effort to try him are limited to those cases in which the conduct giving

3    rise to the successful motion for a mistrial was intended to provoke the defendant into

4    moving for a mistrial." Id. at 679.  Justices Brennan and Marshall noted in their concurrence

5    that "nothing in the holding of the Court today prevents the state courts, on remand, from

6    concluding that respondent's retrial would violate the provision of the [state] Constitution

7    that prohibits double jeopardy . . . as that provision has been interpreted by the state courts."

8    Id. (Brennan, J., concurring).  In Pool, the Arizona Supreme Court elected to adopt a standard

9    for the double jeopardy clause of the state constitution that included the federal standard, but

10   also afforded additional protection for the defendant: while Oregon holds that jeopardy

11   attaches only when the prosecutor intends to provoke the defendant to move for a mistrial,

12   Pool provides constitutional protection to the defendant when the prosecutor intentionally

13   engages in conduct that he "knows  to be improper and prejudicial, and which he pursues for

14   any improper purpose with indifference to a significant resulting danger of mistrial or

15   reversal."   Pool, 139 Ariz. at 108-9, 677 P.2d at 271-72 (emphasis added).   Thus, in

16   reviewing Petitioner's claim, the Court of Appeals applied a standard that was not only

17   complimentary to federal law, but was also more favorable to the Petitioner than application

18   of federal law would have been.

19        The Arizona Court of Appeals decision also did not involve an unreasonable

20   application of federal law.  In concluding that the prosecutor had not intentionally provoked

21   a mistrial, the Court of Appeals noted that the trial court had engaged in extensive inquiry

22   into the prosecutor's failure to disclose and concluded that the record permitted the trial

23   court's conclusion that the prosecutor did not intend to provoke a mistrial.  The court found

24   that the victim had spontaneously volunteered to the prosecutor on the day of trial that he

25   could identify Petitioner as the last person he saw "before everything went black." (Answer,

26   Ex. S, pg. 87.)  On redirect, when the victim began to describe the last person that he saw

27   before he was hit, the prosecutor stopped the witness and asked to approach the bench, at

28   which time he disclosed to the court the victim's expected identification of the Petitioner. Id.

at pg. 70, 100.  The court authorized the line of questioning, reserving defense counsel the right to re-cross, before the identification testimony was elicited.  Id. at pg. 70-71; 100-01. Petitioner's own trial counsel stated to the trial court that the prosecutor had "always been straight with [him] and [he didn't] think [he was] trying to shove something under the rug here."  Id. at pg. 93.  The trial court then concluded that the eleventh-hour identification of Petitioner by the victim did not appear to be "deliberate orchestration."  Id. at pg. 94. In sum, the trial court record was essentially devoid of evidence suggesting that the prosecutor acted with intent to provoke a mistrial.

In sum, the Arizona Court of Appeals decision was not contrary to, or an unreasonable application of, federal law.  Petitioner does not contend, and the Magistrate Judge finds no evidence from which to conclude, that the Arizona Court of Appeals decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, the Magistrate Judge recommends denying the petition with respect to Ground 2.

### iii.    Ground 4

Petitioner has properly exhausted his claims that he was denied effective assistance of counsel in violation of the 6th and 14th Amendments when: (1) his trial counsel failed to file a pretrial motion to exclude evidence regarding Petitioner's attempts to elude police, which Petitioner claims would have been excluded by Rule 404, Ariz. R. Evid., (2) his trial counsel failed to request mistrial, and (3) his trial counsel failed to request instruction on the lesser-included-offense of theft.

Petitioner has failed to demonstrate that the state court's decision was contrary to federal law.  In considering the Rule 32 petition, the trial court applied the appropriate federal law.  The trial court concluded that "Defendant has failed to demonstrate that his counsel's cumulative performance fell below an objective standard of reasonableness and that any deficiencies in counsel's performance resulted in prejudice to him." (Answer, Ex. J, pg. 1.)  This is the legal standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), the leading United States Supreme Court case governing ineffective assistance of

1  counsel claims.

2      Petitioner has also failed to demonstrate that the state court application of federal law
3  to the facts was unreasonable.  The Sixth Amendment guarantees not only the right to
4  counsel, but the right to effective assistance of counsel.  Strickland, 466 U.S. at 686.  There
5  is no constitutional right to an attorney in state post conviction proceedings.  Coleman, 501
6  U.S. at 752.  The burden of proof on Petitioner to show ineffective assistance is two-pronged.
7  First, Petitioner must show that counsel's performance was deficient, in that counsel made
8  errors so serious that counsel was not functioning as "counsel."  Strickland, 466 U.S. at 687.
9  In demonstrating a deficient performance, Petitioner must show that the representation fell
10  below an objective standard of reasonableness.  Id. at 688.  Judicial scrutiny of counsel's
11  performance must be highly deferential, since there is a "strong presumption that counsel's
12  performance falls within the "wide range of professional assistance."  Kimmelman v.
13  Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).

14      Second, in proving ineffectiveness, Petitioner must show that counsel's deficient
15  performance prejudiced the defense.  Strickland, 466 U.S. at 692.  To prove prejudice,
16  Petitioner must show that there is a reasonable probability that, but for counsel's errors and
17  omissions, the result of the proceeding would have been different.  Id. at 694.  A reasonable
18  probability is a "probability sufficient to undermine confidence in the outcome."  Id.

19      Mere conclusory allegations are insufficient to prove that counsel was ineffective.
20  Shah v. United States, 878 F.2d 1156, 1161 (9th Cir. 1989).  A habeas petitioner is entitled
21  to an evidentiary hearing or habeas relief when "he has alleged facts [in his petition] which,
22  if proven, would entitle him to relief. . . . [N]otice pleading is not sufficient, for the petition
23  is expected to state facts that point to a real possibility of constitutional error."  O'Bremski
24  v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (internal quotations omitted).

27      **(1)    Trial counsel's alleged failure to file a pretrial motion to exclude evidence
28  regarding Petitioner's attempts to elude police, which Petitioner claims would have been excluded by Rule 404, Ariz. R. Evid.**

22

1    Trial counsel's failure to file a pretrial motion to exclude evidence that Petitioner

2    attempted to flee the scene on the ground that such evidence fell within the purview of Rule

3    404, Ariz. R. Evid., was not an error, and thus Petitioner has failed to meet his burden under

4    the first prong of the <u>Strickland</u> test. Rule 404, Ariz. R. Evid., precludes the admission of

5    evidence tending to prove that the defendant also committed other crimes or wrongs, if such

6    evidence is admitted to prove the character of the person in order to show conformity

7    therewith.  Other acts evidence is admissible, however, if it is admitted for some other

8    purpose, such as intent, knowledge, identity of absence of mistake, or accident.  <u>See</u> Rule

9    404(b), Ariz. R. Evid.   In the present case, three officers testified at trial concerning

10   Petitioner's attempts to elude them in the stolen car.  They testified that Petitioner hit two

11   police cars.  (Answer, Ex. I, pg. 4.)  This evidence was not admitted to prove that because

12   Petitioner had hit police cars, he was the "type" of person who would hit the victim and steal

13   his car.  Rather, this evidence was admitted because it tends to show that Petitioner was

14   guilty, and knew that he was guilty, of armed robbery.  The officer's testimony is also

15   relevant to the issue of identity, as Petitioner's attempts to elude police in the stolen car tend

16   to prove that he was in fact the person who stole the car.  Given that the officer's testimony

17   falls outside the scope of evidence prohibited by Rule 404, it would not have been a

18   productive exercise for trial counsel to file a pretrial motion to exclude this evidence.  Failure

19   to take futile action can never be deficient performance. <u>Rupe v. Wood</u>, 93 F.3d 1434, 1445

20   (9th Cir. 1996).  Thus, the state court  reasonably applied federal law when it concluded that

21   trial counsel's failure to file a pretrial motion with respect to this evidence was reasonable.

22   (Answer, Ex. J, pgs. 1-2.)

23          **(2)      Trial counsel's alleged failure to accept the trial court's offer of a mistrial**

24          The trial court offered to declare a mistrial following the prosecution's admission of

25   the victim's surprise testimony identifying Petitioner as the last man he saw before he was

26   struck.  Petitioner's counsel rejected the offer.  Petitioner now claims that his counsel's

27   failure to accept the mistrial constituted ineffective assistance of counsel.  Petitioner claims

28   that if his counsel had accepted the offer of a mistrial, Petitioner would have had the

23

opportunity to reevaluate his defense and pursue possible plea negotiations. (Petition, pg. 8.)

The trial court, in considering Petitioner's Rule 32 petition, concluded that Petitioner's counsel's rejection of the mistrial was strategic.  (Answer, Ex. J, pg. 3.)  Even if a new trial had been granted, the trial court reasoned, the victim's identification testimony would have been admissible, and therefore a new trial would not have benefitted Petitioner.  Id.  In so holding, the trial court reasonably applied federal law; there is no evidence that trial counsel's rejection of the mistrial fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688.    Although a mistrial might have provided Petitioner with an opportunity to plead, as he claims, Petitioner's counsel was also aware of the risks of agreeing to a mistrial.  At the trial, counsel complained to the court that the jury had heard surprise testimony from the victim that Petitioner was the last person that he saw before he was hit, and that the testimony had caused damage to his client.  (Answer, Ex. S, pg. 112.) Counsel, however, argued to the court, "I don't want a mistrial because all that does, I hang out my right cross, the state comes back three weeks from now and bam, knocks me out with it."  Id.  While it is unclear what counsel was referring to as his "right cross," it appears that counsel believed that a mistrial would disadvantage his client by providing the state with additional time to address the deficiencies in its case.  Indeed, if counsel had agreed to a mistrial, at a subsequent trial, the victim's credibility would not be compromised by his eleventh-hour identification of Petitioner.  The prosecution would have a "second shot" at bolstering its evidence to counter the identification defense that Petitioner's counsel had presented during the first trial.  Thus, it cannot be said that counsel's rejection of the mistrial was beyond the bounds of reason.  Although Petitioner now wishes his counsel had acted differently, a tactical decision by counsel with which the Petitioner disagrees cannot form the basis of a claim of ineffective assistance of counsel.  Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001).

**(3)	Trial counsel's alleged failure to request instruction on lesser-included offense of theft**

24

Trial counsel's decision not to request a jury instruction on a lesser-included offense of theft can also be construed as a tactical decision precluding a finding of ineffective assistance of counsel. Petitioner admitted at trial to stealing the victim's car and to being in possession of the victim's wallet when he was arrested, but denied striking the victim with a club. (Answer, Ex. E, pg. 2.) The prosecution had scant evidence with which to prove that Petitioner had hit the victim before stealing his car: its only identification witness, Byrd, failed to appear at trial, and had not provided previous testimony that clearly identified Petitioner as the assailant.[5] Thus, as the trial court noted during its Rule 32 review:

> Defense counsel effectively argued that his client had committed a theft, but not an armed robbery. If the jury would have bought this argument, it would have had no choice but to acquit the Defendant of the armed robbery charge, and this may very well have precluded the State from bringing a later theft charge in accord with the Double Jeopardy clauses of the United States and Arizona constitutions. If a lesser included instruction of theft or simple robbery had been requested, the Defendant would have risked being convicted of a lesser offense rather than being acquitted if the jury found that all of the elements of armed robbery had not been proven beyond a reasonable doubt.

(Answer, Ex. J, pg. 4.) Petitioner's insistence that counsel should have requested a lesser-included-offense instruction is not enough to overcome the presumption that counsel's decision not to do so might be considered sound trial strategy. Strickland, 466 U.S. at 689. Petitioner has not shown that this decision was "outside the wide range of professionally competent assistance" or that the failure to request a lesser-included-offense instruction affected the outcome of his trial. See id. at 690-91.

Thus, the trial court's denial of Petitioner's Rule 32 petition was not contrary to, or an unreasonable application of, federal law. In addition, Petitioner does not contend, and the Magistrate Judge finds no evidence from which to conclude, that the trial court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the Magistrate Judge recommends denying the

---

[5]   At the scene, Byrd provided a description that matched Petitioner's appearance, but he did not actually identify Petitioner as the assailant until a later, one-on-one identification. (Answer, Ex. S, pgs 15-16; Ex. J, pg. 2.) That one-on-one identification of the Petitioner by Byrd was never admitted at trial, because Byrd failed to appear. (Answer, Ex. J, pg. 2.)

25

1   petition with respect to Ground 4.

2   **RECOMMENDATION**

3   Based on the foregoing, the Magistrate Judge recommends that the District Court enter

4   an order DENYING the Petition for Writ of Habeas Corpus as to Grounds 2, 3 and 4, and

5   DISMISSING the action as to those claims; STAYING the Petition for Writ of Habeas

6   Corpus as to Ground 1, and ORDERING that Petitioner shall be permitted 30 days from the

7   date of its order to pursue his state court remedies with respect to Ground 1, and that

8   Petitioner must return to federal court within 30 days after state exhaustion is completed.

9   Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within

10  ten days of being served with a copy of the Report and Recommendation.  If objections are

11  not timely filed, they may be deemed waived.   If objections are filed, the parties should use

12  the following case number:  CV-04-2560-PHX-FJM.

13  The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner

14  and counsel for Respondents.

15  DATED this 10th day of April, 2007.

Jennifer C. Guerin
United States Magistrate Judge

26